```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------x
UNITED STATES OF AMERICA,                    :
                                             :
       Plaintiff,                            :     08 Cr. 62 (JSR)
                                             :
  -v-                                        :     OPINION AND ORDER
                                             :
ZACHARY BALLARD,                             :
                                             :
       Defendant.                            :
                                             :
---------------------------------------------x
```

JED S. RAKOFF, U.S.D.J.:

Before the Court is Zachary Ballard's motion for sentence reduction under 18 U.S.C. § 3852(c). ECF No. 85. In 2008, a jury convicted Ballard of seven counts: one count of Hobbs Act conspiracy, 18 U.S.C. § 1951; three substantive counts of Hobbs Act robbery, 18 U.S.C. § 1951; and three counts of brandishing a weapon during a crime of violence, 18 U.S.C. § 924(c). The charges stemmed from a series of gunpoint robberies at commercial businesses in the Bronx. At that time, section 924(c) carried a mandatory minimum sentence of 25 years' imprisonment for two of the three brandishing counts, and it required that those sentences run consecutively. The Court was therefore required to impose a mandatory minimum sentence of 600 months' imprisonment, i.e., 50 years. At Ballard's sentencing, the Court remarked that it had "the greatest sympathy for the plight in which [Ballard found himself] because of these mandatory minimums." ECF No.

1

49 at 20:19-20. The total sentence of imprisonment the Court imposed was 601 months.

Ballard, now 38 years old, has served more than thirteen years of his sentence of fifty years and one month. He is due to be released April 13, 2051. ECF 86 at 2. Under 18 U.S.C. § 3582(c), a court may modify a defendant's sentence to reduce a term of imprisonment if it finds, inter alia, that "extraordinary and compelling reasons warrant such a reduction." Arguing that his original sentence was extraordinarily severe in relation to the factors outlined in 18 U.S.C. § 3553(a), Ballard seeks a reduction of his sentence to time served. He identifies several aspects of his case that he argues amount to extraordinary and compelling reasons warranting such a reduction. ECF No. 86. According to Ballard, these include the enactment of the First Step Act, the disproportionality between his and his co-defendant's sentences, his record of rehabilitation, and the ongoing coronavirus pandemic. Id.

The Court has carefully considered Ballard's motion, the Government's papers in opposition, correspondence from Ballard and members of his family, and the parties' presentations at oral argument. After due consideration, and for the reasons given below, the Court grants Ballard's motion for a sentence reduction and resentences Ballard to a term of 301 months' imprisonment. All other aspects of Ballard's sentence remain unaltered.

I.   **Background**

In October and November 2007, Ballard and his co-defendant, Anthony Steele, engaged in a series of armed robberies in the Bronx. ECF No. 34 at 3-6. Ballard "terrorized victims with a firearm," sometimes thrusting the gun at victims' chests and other times cocking and holding the gun to victims' heads. ECF No. 87 at 1. The businesses Ballard and Steele targeted included a Sears department store, a Kentucky Fried Chicken restaurant, and a Family Dollar store. Id. Together, Ballard and Steele were involved in approximately twenty robberies, garnering roughly $40,000 in proceeds. ECF No. 87 at 1. As this Court observed at Ballard's sentencing, these were "brutal robberies undertaken for reasons that are still somewhat mind-boggling," such as purchasing trendy clothes. ECF No. 49 at 17.

Steele pled guilty to two counts: conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951, and use of a firearm during and in relation to Hobbs Act robbery, 18 U.S.C. § 924(c). While Steele pled guilty to a criminal information that enumerated six overt acts under the conspiracy count, United States v. Steele, No. 8-cr-62-2 (JSR), ECF No. 29, in his plea agreement Steele acknowledged committing twenty-two other robberies as well, United States v. Steele, No. 8-cr-62-2 (JSR), ECF No. 42 at 8. The Court sentenced Steele to 168 months' imprisonment. United States v. Steele, ECF No. 40. In September 2019, following the United States Supreme Court's decision in United States v. Davis, 139 S. Ct. 2319 (2019), the Government consented to vacating Steele's firearm conviction on the ground that Hobbs Act conspiracy

3

was no longer a predicate crime of violence under 18 U.S.C. § 924(c).[1] The Court ultimately resentenced Steele to time served, i.e., 143 months' imprisonment. United States v. Steele, ECF No. 78.

Ballard, in contrast, chose to exercise his right to trial rather than plead guilty. After a four-day trial before this Court, the jury convicted Ballard of seven counts: one Hobbs Act conspiracy count, three substantive Hobbs Act robbery counts, and three section 924(c) counts of brandishing a firearm during those robberies. ECF No. 47.

The statutes under which Ballard was convicted, as well as the United States Sentencing Guidelines, carried very severe punishment. The conspiracy and substantive robbery counts carried a recommended Guidelines range of 84 to 105 months' imprisonment, but no statutory minimum, United States v. Ballard, 599 F. Supp. 2d 539, 540 (S.D.N.Y. 2009). The gun counts, however, carried mandatory minimum sentences that at the time were set forth under 18 U.S.C. § 924(c)(1)(A) and (C). Over the course of a two-day sentencing hearing, the Court concluded that section 924(c) carried a mandatory minimum sentence of 300 months' imprisonment on each of two of the gun counts and that the

---

[1] Steele was eligible for relief under Davis because the section 924(c)-predicate crime of which he was convicted was Hobbs Act conspiracy, which does not include within its elements the use, attempted use, or threatened use of physical force. The Supreme Court held that section 924(c)'s "residual clause," 18 U.S.C. § 924(c)(3)(B), was unconstitutionally vague because it "provides no reliable way to determine which offenses qualify as crimes of violence." Davis, 139 S. Ct. at 2324. In contrast, Ballard was convicted of substantive Hobbs Act robbery, a crime which includes within its elements the use of actual or threatened force. See 18 U.S.C. § 1951(b)(1). The Second Circuit made this point in dismissing one of Ballard's appeals, ECF No. 70.

4

statute's so-called "stacking" provision required that those sentences run consecutively. Ballard, 599 F. Supp. 2d at 541. The Court determined that the stacking provision overrode the mandatory minimum sentence on the third gun count, and with respect to all the remaining counts, the Court decided to impose only one month of imprisonment. Id. at 540-542. Ballard's total sentence, therefore, came to 601 months' imprisonment.

The Government, believing that section 924(c) required this Court to sentence Ballard to three, rather than two, consecutive mandatory minimum sentences totaling approximately 64 years in prison, moved that Ballard's sentence be corrected for clear error. See ECF 45. The Court denied that motion, observing that "[w]hen the letter of the law so far departs from justice as to become the instrument of brutality, common sense should call a halt." Ballard, 599 F. Supp. 2d at 543. Ballard's appeals of his conviction and sentence were denied. See ECF 51, 57, 60, & 70.

## II.  **Legal Framework**

Ballard brings his motion for sentence reduction under 18 U.S.C. § 3852(c)(1)(A). An incarcerated defendant may file such a motion 30 days after having petitioned the Bureau of Prisons to move for a sentence reduction on his behalf or after having fully exhausted all administrative remedies to appeal the Bureau's failure to do so. Id. The statute's now-familiar standard requires the Court to "ask four questions: (1) has the defendant complied with the administrative exhaustion requirement, (2) has the defendant shown extraordinary and

5

compelling reasons warranting a sentence reduction, (3) are the 18 U.S.C. § 3553(a) sentencing factors consistent with a lesser sentence than that previously imposed, and (4) is there a particular sentence reduction consistent with the § 3553(a) factors that is also warranted by extraordinary and compelling reasons." United States v. Garcia, 505 F. Supp. 3d 328 (S.D.N.Y. 2020). Following the Second Circuit's decision in United States v. Brooker, it is undisputed that district courts are "free[] ... to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." 976 F.3d 228, 237 (2d Cir. 2020).[2]

### III. Analysis

The Court finds that Ballard has satisfied all four of the elements of a motion for sentence reduction, which are addressed seriatim.

A. Administrative Exhaustion

On December 8, 2020, Ballard submitted a pro se compassionate release application to the Warden of United States Penitentiary Big Sandy, Inez, Kentucky. ECF No. 85, Ex. A. The Bureau of Prisons denied Ballard's application on January 6, 2021. Id. Ex. B. Ballard then filed the instant motion on May 3, 2021, more than thirty days after

---

[2] In exercising its discretion, "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.'" Brooker, 976 F.3d at 238 (citing 28 U.S.C. § 994(t)). This limitation is inapposite here, because neither Ballard nor the Court relies solely on his rehabilitation.

6

applying. ECF No. 85. The Court therefore holds that he has satisfied 18 U.S.C. § 3852(c)(1)(A)'s administrative exhaustion requirements.

B. Extraordinary and Compelling Reasons

In 2018, Congress amended section 924(c) to eliminate the draconian "stacking" provision that required this Court to sentence Ballard to a mandatory minimum of fifty years' imprisonment, which the Court noted at the time was plainly unjust. Therefore, were Ballard convicted of the same offenses today, he would be subject to a far shorter minimum sentence. The Court therefore holds that the First Step Act's dramatic amendment to section 924(c) constitutes an extraordinary and compelling reason warranting a reduction of Ballard's sentence. But assuming arguendo that further reasons were required, the Court finds that the totality of the change in the law, the substantial disparity between Ballard's and his co-defendant's sentences, and Ballard's ongoing rehabilitation together amount to an extraordinary and compelling reason warranting a sentence reduction.

1. First Step Act

Nine years into Ballard's fifty-year sentence, Congress passed, and the President signed, the First Step Act, 502 Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). The First Step Act eliminated the provision requiring "stacking" of mandatory minimum sentences for multiple convictions under 18 U.S.C. § 924(c) in a single prosecution.[3]

---

[3] The First Step Act also amended 18 U.S.C. § 3852(c)(1)(A)'s exhaustion requirement, so an incarcerated person can now bring a motion for sentence reduction thirty days after applying to the

7

First Step Act, § 403(a). As discussed above, it was the now-abolished "stacking" provision that compelled this Court to impose on Ballard two consecutive, 25-year sentences. Ballard, 599 F. Supp. 2d at 541. But the First Step Act does not expressly make the elimination of the "stacking" retroactive. See First Step Act § 403(b). Congress, however, entitled section 403 of the First Step Act "Clarification of Section 924(c)," and Ballard urges the Court to regard this label as meaningful. In Ballard's view, that Congress sought to "clarify" section 924(c) implies that Congress did not intend the previous statutory language to operate as it was implemented. ECF 86 at 8. See also United States v. Haynes, 456 F. Supp. 3d 496, 502 (E.D.N.Y. 2020) ("The legal matter of retroactivity aside, the clear message to an individual in [the defendant's] situation is that Congress never intended that the brutal sentence he is serving be imposed.")

Courts across the country have reduced stacked section 924(c) sentences following the First Step Act's enactment. In United States v. McCoy, for instance, the Fourth Circuit upheld such a reduction because the First Step Act produced "an exceptionally dramatic" change in sentencing practices. 981 F.3d 271, 285 (4th Cir. 2020). The Fourth Circuit affirmed the district court's conclusion "that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason." See also, e.g.,

---

Bureau of Prisons, as Ballard has, rather than relying solely on the Bureau of Prisons to petition the sentencing court on his behalf.

United States v. Maumau, 993 F.3d 821, 837 (10th Cir. 2021) (affirming reduction to time served, roughly ten years, from "incredible" sentence of 57 years including three stacked § 924(c) brandishing counts, based on factors including First Step Act, defendant's youth at time of sentencing, and other individualized circumstances); United States v. Hicks, No. 98-CR-06-TCK, 2021 WL 1554326 (N.D. Okla. Apr. 21, 2021) (reducing sentence of 112 years and six months to time served, roughly 23 years, due to combination of First Step Act, youth at time of offense, lack of prior felony convictions, and good behavior during incarceration); Haynes, 456 F. Supp. 3d at 514–16. Indeed, some courts have found that the passage of the First Step Act alone constitutes an extraordinary and compelling circumstance. See, e.g., United States v. Turner, No. 99-10023-04-JTM, 2020 WL 5016880 (D. Kan. Aug. 25, 2020) (reducing an "extremely severe" sentence of 510 months to time served of roughly 228 months). Other Courts, however, have declined to hold that the elimination of "stacking" alone warrants a sentence reduction. See, e.g., United States v. Lorenzano, No. 3-CR-1256 (JFK), 2021 WL 734984, *3 (S.D.N.Y. Feb. 24, 2021); United States v. Musa, 502 F. Supp. 3d 803, 812 (S.D.N.Y. 2020).

The Government contends that Ballard has brought forward no extraordinary and compelling reason for a sentence reduction other than the passage of the First Step Act, and it argues that a sentence modification motion under section 3582(c) is "an inappropriate mechanism" to seek a sentence reduction on the basis of a change in the law. ECF No. 87 at 7. The Government further urges the Court to

follow what it insists is the Congress's intent not to make the elimination of section 924(c) "stacking" retroactive. Id. at 11. At oral argument, the Government asserted that Congress eschewed retroactivity because a retroactive change would affect too many incarcerated defendants and so overburden courts with motions for sentence reduction. Tr. of Oral Arg., July 9, 2021, at 10:3-8. But as the Court discussed at argument, it is "hard to see the logic" of the government's proffered rationale: "that this stacking provision was wrong and unfair and often led to overly long sentences, but [Congress was] only going to change this prospectively ... because it would be administratively difficult if we had to deal with so many people making applications." Id. 10:9-21. The Court rejects this "callousness" and will not adopt the position that "people [should] continue to rot in prison" to avoid a rule where "judges [might] be burdened with lots of motions." Id. 10:13-24.

Notwithstanding the Government's position on retroactivity, it concedes that the change in the law, even standing alone, "fall[s] within the category of circumstances" that, under Brooker, the Court may determine are extraordinary and compelling and therefore warrant a sentence reduction. Id. at 8:17.

Ballard's is one of numerous cases in which the operation of section 924(c)'s "stacking" provision made the "letter of the law so far depart[] from justice as to become the instrument of brutality," Ballard, 599 F. Supp. 2d at 543. While it produced many injustices, one identified by Ballard deserves particular mention: before the

10

First Step Act's amendment, section 924(c) sentence "stacking" disproportionately affected African-American men, such as himself. See ECF No. 86 at 9-10 (citing U.S. Sentencing Commission data); see also Haynes, 456 F. Supp. 3d at 517 (acknowledging section 924(c)'s "history of disproportionate use against Black men"). The manner in which Congress amended section 924(c) gives rise to doubts whether Congress intended the law to produce such severe results; but it unmistakably rejects such results today. The Court therefore holds that the First Step Act's elimination of sentence "stacking" under section 924(c) constitutes an extraordinary and compelling circumstance warranting reduction in the sentence of a defendant who was subject to this abolished punishment.

Accordingly, this Court determines that the First Step Act's dramatic change to the statutory scheme under which Ballard was sentenced is, alone, sufficient to justify granting his motion for sentence reduction.

2. Sentencing Disparities

The amendment of section 924(c) is not, however, Ballard's only argument. Therefore, assuming arguendo that the First Step Act's elimination of section 924(c) sentence stacking were not enough, the Court considers Ballard's other arguments.

As described above, Ballard received a substantially higher sentence than his co-defendant, Steele. Absent a reduction, Ballard is expected to be incarcerated for more than four times as long as Steele. This disparity arose in significant part from the Government's

11

"charge bargaining" with Steele, who ultimately pled guilty to just two counts, despite having admitted to having committed twenty two robberies beyond those for which Ballard was convicted. See United States v. Steele, No. 8-cr-62-2 (JSR), ECF No. 29. Ballard, in contrast, exercised his right to a jury trial and so was ultimately convicted of seven charges related to only a subset of the robberies to which Steele admitted.

To be sure, Ballard had a longer criminal history than Steele, and Ballard engaged in more egregious conduct during the robberies for which he was convicted. But the fact that Ballard may have deserved a sentence longer than Steele's does not rationalize the "drastic severity" of the sentence that mandatory minimums required the Court to impose. Haynes, 456 F. Supp. 3d at 514. Indeed, at the initial sentencing hearing, the Court observed that "nothing" in the circumstances of Ballard's case "would warrant a sentence of four times or more" Steele's sentence. ECF No. 43 at 10:24-25:1. Yet section 924(c)'s mandatory minimums required this manifestly unjust result, leading the Court to conclude that "[t]he distorting effects of mandatory minimum sentences are never more evident than in the case of defendant Zachary Ballard." Ballard, 599 F. Supp. 2d at 539. Accordingly, the Court concludes that the gross disparity between Ballard's and his co-defendant's sentences provides another reason to find that the extraordinary and compelling circumstances of this case warrant a sentence reduction.

3. <u>Rehabilitation</u>

Ballard argues that his rehabilitation while incarcerated also contributes to the existence of extraordinary and compelling circumstances here. While Ballard does not claim an immaculate record, he argues that his record while incarcerated evinces personal growth deserving of recognition. The Court recognizes that Ballard's rehabilitation is on an upward trajectory. In recent years, he has completed numerous educational courses, led fellow inmates in physical fitness and nutrition classes, and taken time to reflect on his goals for his life. ECF No. 88 at 6-8. Records from the Bureau of Prisons bear out Ballard's assertion that his rehabilitation is accelerating: he has completed some fifty sessions or courses, the bulk of them since 2018. ECF No. 85, Ex. E at 18-19.

But as the Government rightly points out, Ballard's record is far from spotless. Records from the Bureau of Prisons document twenty-one infractions, including fighting (2009), possession of a weapon (2011), and possession of drugs and alcohol (2011, 2014, 2016, and 2017), and an infraction as recently as January 2019. ECF No. 85, Ex. D. at 15-17. On balance, Ballard's rehabilitation is not yet sufficiently established to make it material to this decision.

4. <u>Coronavirus Pandemic</u>

Ballard asserts that a further extraordinary and compelling reason for granting his motion is the health risk posed by incarceration during the ongoing COVID-19 pandemic. Ballard emphasizes that his risk of contracting COVID-19 is particularly elevated because

13

he is housed in a high-security prison where social distancing has not been possible. ECF No. 86 at 14. But the Court cannot credit Ballard's argument, because Ballard has unreasonably elevated his own risk of contracting COVID-19 -- and, significantly, increased the risk of COVID-19 to the others who are incarcerated alongside him and those who work in his facility -- by refusing to accept administration of the COVID-19 vaccine when it was offered to him. See ECF 87-1 (vaccine refusal form). The Court has also reviewed a further letter from Ballard, responding to the Court's questions at oral argument, in which he expresses distrust of the medical department at the prison where he is currently incarcerated. Ballard insists that he is now willing to be vaccinated if he were moved to a different prison. ECF No. 89. The Court acknowledges that disinformation about the COVID-19 vaccine is widespread in the United States and that these "misinformation and ... conspiracies" are even more common in jails and prisons. See Tr. 6:13-24. Yet the Court cannot credit Ballard with health risks he has voluntarily and unreasonably exacerbated. Therefore, the risks posed by the COVID-19 pandemic do not weigh in Ballard's favor.

The Court therefore holds that the First Step Act's abolition of section 924(c)'s mandatory minimum "stacking" provision establishes, on its own that Ballard's case presents extraordinary and compelling circumstances warranting release. And if, arguendo, more were needed, the Court finds that the huge disparity with Steele's sentence also weighs in favor of reducing his sentence.

C. <u>Section 3553(a) Factors</u>

The next consideration is whether the factors listed in 18 U.S.C. § 3553(a) are consistent with reducing Ballard's fifty-years-and-one-month sentence. A reduction is clearly warranted under these statutory factors.

First is whether reduction would be consistent with "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a)(1). Ballard's crimes were extremely serious, warranting a lengthy sentence of imprisonment. He and Steele placed members of the public in fear for their lives, creating not only the risk of death and serious physical injury to unwilling victims but also lasting psychological and emotional trauma on the part of those whom Ballard robbed. <u>See</u> ECF No. 43 at 13. It is fortuitous that no one was physically injured during his robberies, but Ballard does not deserve credit for that good fortune.

Yet the Court is not unsympathetic to Ballard's background and the context it provides for his misconduct. ECF No. 86 at 11; <u>see also</u> ECF No. 85, Ex. E. Abandoned by his parents, Ballard was dismissed from one school and stopped attending another; by age eighteen, he was smoking marijuana daily and had been arrested for criminal sale of a controlled substance. ECF No. 86 at 11.

As this Court noted in <u>United States v. Ramsay</u>, --- F. Supp. 3d ---, 2021 WL 1877963, at *8 (S.D.N.Y. May 11, 2021), studies of brain development suggest that the prefrontal cortex, the area responsible for executive functioning, does not finish developing "until the early

20s or later." Brain systems supporting the capacity to exercise self-restraint likewise continue maturing "throughout the teens and into the twenties." Id. at *9. And because recklessness decreases with age, significant portions of those who engage in criminal behavior while younger "desist from crime as they mature." Id. at *12. Ballard was 24, not a teenager, when he committed the crimes for which he was sentenced here, so these factors weigh less in his favor than they did in Ramsay. That does not, however, mean they have no weight at all. The decreased likelihood Ballard would engage in future criminal conduct implies that public safety does not require Ballard's incapacitation for five decades. See 18 U.S.C. § 3553(a)(2)(C). With respect to general deterrence, see id. § 3553(a)(2)(B), the extreme sentence previously mandated by section 924(c)'s former "stacking" provision is excessive by any analysis; fifty years is undoubtedly far beyond the period of incarceration necessary to deter robberies.

Section 3553(a)(3) directs the Court to consider the kinds of sentences available. This factor is particularly relevant here "because, when the Court previously imposed its sentence, it had no choice in the matter." Id. at *15. As the Court observed at the time of Ballard's sentencing, "a sentence of somewhere between 25 and 35 years, a very substantial sentence under any conceivable analysis, would be more than sufficient to achieve the overall Congressional purposes of sentencing as set forth in 18 U.S.C. § 3553(a)." Ballard, 599 F. Supp. 2d at 540. But the Court found that the former § 924(c) overrode its capacity to make such an individualized sentencing

16

determination. Id. at 541. The amendment of that statute constitutes not only an extraordinary and compelling reason to reduce Ballard's sentence but also a factor to be considered in determining the new sentence.

Finally, § 3553(a)(6) requires the Court to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As discussed above, Ballard's crimes were more serious than Steele's, but not so much more serious as to warrant a sentence four times the length of Steele's. That Steele served only 134 months of his 168-month sentence further exacerbates the disparity, as does the fact that persons convicted of Ballard's crimes today would receive substantially lower sentences.

For these reasons, a reduction in Ballard's sentence is consistent with the § 3553(a) factors.

D. Reduction Amount

Last, the Court considers whether there is a particular sentence that would be consistent with the extraordinary and compelling reasons warranting a reduction and the relevant § 3553(a) factors. "How much of a sentence reduction the extraordinary and compelling reasons warrant is, as sentencing always should be, a holistic inquiry, not subject to any prescribed calculation." Ramsay, at *18. Considering all the evidence and arguments offered by Ballard and the Government, the Court concludes that the extraordinary and compelling circumstances in this case warrant a reduction of Ballard's sentence to a term of 301 months' imprisonment, i.e., 25 years plus one month.

This sentence, in addition to being within the range the Court would have considered had it had the freedom to make an individualized determination at the time of Ballard's sentencing, takes into account the other relevant § 3553(a) factors: the seriousness of Ballard's crimes, his age and maturity at the time of sentencing, and the need for greater proportionality between Ballard's sentence and those of others, including his co-defendant Steele.

### IV. Conclusion

For the reasons set forth above, the Court grants Ballard's motion for a sentence reduction. Ballard's sentence is hereby reduced from a term of imprisonment of 601 months to a term of 301 months. All other aspects of his original sentence remain in full force and effect.

SO ORDERED.

Dated:   New York, NY
        August 2, 2021

JED S. RAKOFF, U.S.D.J.